[No. 22499. Department Two. September 17, 1930.]

F. L. PITMAN *et al., Appellants,* v. REBECCA M. SMITH *et al., Respondents.*[1]

*Lee C. Delle* and *Grady & Velikanje,* for appellants.
*John Wilkinson,* for respondents.

FULLERTON, J.—On October 10, 1910, one R. H. Armsworthy and Amanda Armsworthy, his wife, were the owners of certain real property, situated in the city of Yakima, and on that date conveyed the property by deed to John J. Miller and Estelle W. Miller. On October 13, 1910, the Millers executed and delivered to R. H. Armsworthy their promissory note for the sum of five thousand dollars, and secured the note by a mortgage on the real property mentioned. The note bore interest at the rate of eight per cent per annum, and was payable on or before five years after its date.

On the last named date, the Millers conveyed the property by deed to F. L. Pitman and his wife Mary E. Pitman, the appellants in the present action. The

[1]Reported in 291 Pac. 334.

appellants took title to the property subject to the mortgage, but did not assume or agree to pay it or the debt secured thereby. Interest in full was paid upon the debt represented by the note and mortgage for the years 1911, 1912 and 1913, but nothing more was paid thereon prior to the maturity of the note on October 13, 1915. On March 27, 1916, the Pitmans on the one part and the Armsworthys on the other entered into a written agreement reading as follows:

"WHEREAS, F. L. Pitman, being the purchaser from John J. Miller of lot 7, block 231, North Yakima, Wash., subject to a first mortgage dated Oct. 13, 1910, for $5,000 in favor of R. H. Armsworthy and due 5 years after its date, which said mortgage has not been paid; and

"WHEREAS, F. L. Pitman is desirous of selling said property so as to pay said first mortgage and at the same time recover some part of his investment in the property described; and

"WHEREAS, R. H. Armsworthy consents that F. L. Pitman may have such opportunity of sale during a period of three years after Jan. 1, 1916, and consents also to relinquish claim of any unpaid interest upon said mortgage upon condition that he, the said F. L. Pitman, shall pay to R. H. Armsworthy certain sums of money hereinafter stated;

"Now, THEREFORE, it is agreed by and between the said parties above named that for and in consideration of one hundred dollars paid as follows, to wit, one dollar cash receipt of which is hereby acknowledged, $24 on or before Apr. 10, 1916, $25 on or before June 1, 1916, $25 on or before Mar. 1, 1917, and $25 on or before Mar. 1, 1918, the said F. L. Pitman shall remain in possession of and receive the rents from said property and shall pay the taxes thereon during said period and in case the same shall not be sold during the said three years shall convey the property to R. H. Armsworthy free and clear of any incumbrance of theirs and excepting the said mortgage of $5,000 in lieu of a foreclosure thereof. Also said R. H. Armsworthy will, in that event, upon the making of said conveyance to him,

release the said mortgage of record and cancel the note secured thereby.

"It is understood that, during the three-year period terminating Jan. 1, 1919, the said F. L. Pitman will endeavor to sell the said property and will accept any offer of $6,000, or more, and when so sold R. H. Armsworthy will accept a first mortgage thereon executed by the purchaser for the sum of $5,000 due not more than five years after its date, interest annually at 7% in lieu of his present mortgage in which case the present mortgage will be released of record and the note which it secures cancelled.

"For the purpose of carrying [out] this agreement, F. L. Pitman and Mary E. Pitman, his wife, will on or before Apr. 30th, 1916, execute the conveyance above mentioned of said property effective upon delivery to R. H. Armsworthy and place the same in escrow in the hands of Clark County Bank of Washougal, Wash., and in like manner R. H. Armsworthy will on or before said last named date place the said mortgage and note in escrow in the hands of said bank, all with instructions to said bank to deliver said instruments in accordance with the terms hereof as satisfactorily shown to said bank."

Pursuant to the agreement, the appellants executed the deed therein mentioned and deposited the same in escrow with the bank named. The Armsworthys, in carrying out their part of the agreement, deposited the note and mortgage with the bank, authorizing the mortgage to be canceled and the note delivered to the appellants on the delivery of the deed to them. The appellants remained in possession of the property during the period of the agreement, collected the rents and profits of the property, paid the taxes, and paid the sums agreed to be paid to the Armsworthys, but were unable to find a purchaser for the property; and under date of December 30, 1918, a second agreement in writing was entered into, extending the time of the first

for a term of two years, without change in its conditions. No change in the situation occurred during the term of the extension, and at the end of that period, a third agreement was entered into, reading as follows:

"Yakima, Wash., Dec. 23, 1920.

"For the purpose of providing opportunity for the improvement of lot 7, block 231 of the city of Yakima, Wash., by the construction of a building thereon, and the receipt of a further consideration of one dollar which is hereby acknowledged, the undersigned hereby grants to F. L. Pitman an extension of time for the payment of the mortgage against said property to and until Jan. 1, 1922, or until the improvement referred to shall have been completed, at which time the indebtedness of $5,000 against said property shall begin to draw interest at (6%) six per cent per annum until paid.

"This instrument shall be authority for the Bank of Washougal to hold the agreement between said F. L. Pitman and the undersigned, and the deed attached to the same until said date of Jan. 1, 1922, under its terms except as to date of delivery of the deed and the payment of the $25 per annum therein provided as interest the latter being extended to July 1, 1921.

"This instrument shall be binding upon us when accepted and approved by F. L. Pitman.

"(Signed) R. H. Armsworthy
"(Signed) Amanda Armsworthy
"Accepted and approved
"(Signed) F. L. Pitman."

No action was taken by either party with reference to the last agreement at the expiration of its term, and there was no further agreement, which was put in writing, prior to the death of R. H. Armsworthy, which occurred on July 27, 1922. The appellants contend, however, that, between these dates (to quote from the appellants' complaint):

". . . it was mutually agreed between these plaintiffs and said Armsworthy and wife that said note and mortgage should be considered and treated as canceled

and that no claim whatever thereon should be made against said property, and that said Armsworthys and these plaintiffs should thenceforth be considered joint owners of said property according to their respective interests, and that the plaintiffs should continue to have charge of the property, collecting all rents, issues and profits thereof, paying all taxes, insurance, repairs necessary for the protection and upkeep of said property, and in addition thereto were to continue to pay to said Armsworthy and wife the said sum of $25 per year, . . ."

On the death of her husband, Amanda Armsworthy succeeded to all his rights and interests. She seems to have intrusted the management of her affairs to an agent, one Ellis Laird, and the appellants claim to have entered into an oral agreement with the agent to purchase her interests in the property for the sum of seven hundred dollars, and claim that the death of Amanda Armsworthy occurred before it could be consummated.

Amanda Armsworthy died on September 27, 1926, leaving a will in which she named Ellis Laird as her executor, and in which she devised her property to certain of her relatives. These persons, as her representatives, refused to recognize either of the oral agreements, and the appellants instituted the present action against them seeking a decree of the court establishing and decreeing that they are joint owners of the property with such representatives, that the mortgage be canceled of record, that the representatives be required and directed to convey the mortgaged property to them on the payment of seven hundred dollars, and that they have such other and further relief as the court shall deem meet and equitable.

The respondents, answering the complaint, put in issue the allegations of the complaint with respect to the oral agreements set out therein, and interposed an affirmative plea in which they sought an enforcement

of the escrow agreement and a recovery against the appellants for reasonable rental value of the property subsequent to the time of the expiration of the last of the extension agreements. Following a trial of the issues, the court entered a decree denying to the plaintiffs any relief, and denying to the defendants any recovery on the account of rentals. It decreed, however, that the escrow agreement be carried into effect by a delivery to the defendants of the deed deposited and a delivery to the plaintiffs of the note and mortgage. It also quieted the title to the property in the defendants, and directed that they be let into the immediate possession thereof. The appeal is from this decree.

The contention urged on the appeal is that the court erred in refusing to enforce the oral agreements set out in the complaint. But we find little or nothing in the record to support the first of these. The appellants were precluded by the statute from testifying concerning it, because of the death of the other parties thereto, and such evidence as they were otherwise able to produce falls short of that certainty required in such cases. It seems, too, that the fact that there was no writing with reference to it is a strong circumstance against the probability that the Armsworthys understood that they had made such an agreement. With respect to their other agreements concerning the property, they were carefully put in writing, in language incapable of being misunderstood, and it is at least strange that this one, the most important of them all, would be suffered to rest in parol.

The contention that there was a contract of purchase entered into between the appellants and the agent of Amanda Armsworthy subsequent to the death of the husband, the trial court also found to be without support. The agreement was testified to by

one of the appellants, and the agent admits that a proposition to that effect was made to him. But he denies that he had any authority to make such a contract on behalf of Mrs. Armsworthy, and agreed only to submit the proposition to her. However, if we assume that the version given by the appellant is correct, it would hardly warrant the relief asked. The agreement affected real property. It rested in parol. There was no change in the character of the possession of the property as a result of the agreement, and no other consideration passed between the parties at the time. Such an agreement is not enforceable in this state. *Nichols v. Oppermann,* 6 Wash. 618, 34 Pac. 162; *Brewer v. Cropp,* 10 Wash. 136, 38 Pac. 866; *Thill v. Johnston,* 60 Wash. 393, 111 Pac. 225; *Cameron v. Purbaugh,* 130 Wash. 440, 227 Pac. 858.

The judgment is affirmed.

MILLARD, PARKER, MAIN, and HOLCOMB, JJ., concur.